Clarence C. COLLISON, Jr. and C. Walter Hawke, Plaintiffs,

v.

William A. DEISEM, Executor of the Last Will and Testament of Myrtle E. Deisem, Deceased, Audrey D. Boyle and Gladys D. Willard, Defendants.

Court of Chancery of Delaware, New Castle.

April 3, 1970.

Stephen Hamilton, Wilmington, for plaintiffs.

David A. Drexler, and Joseph C. Kelly, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant William A. Deisem, Executor of the Last Will and Testament of Myrtle E. Deisem, Deceased.

Albert L. Simon, Wilmington, for defendants Audrey D. Boyle and Gladys D. Willard.

DUFFY, Chancellor:

In this action Clarence C. Collison, Jr., and C. Walter Hawke, plaintiffs, seek an

order of specific performance upon defendant William A. Deisem, Executor of the estate of Myrtle E. Deisem, deceased, compelling him to sell and transfer to them fourteen shares of stock in Bird, Ford & Company, a Delaware corporation. Plaintiffs are officers and directors of that Company. Defendants Audrey D. Boyle and Gladys D. Willard are beneficiaries under Mrs. Deisem's will and were permitted to intervene over objection by plaintiffs. This is the decision on plaintiffs' motion for summary judgment.

I

Mrs. Deisem died on March 9, 1968, owning the fourteen shares, which represent 50% of the total outstanding stock. In her will she gave plaintiffs an option to buy all of that stock at a price to be determined by appraisal; she said:

"If, at the time of my decease, I shall still be the owner of shares of stock in Bird, Ford and Company, Incorporated, a corporation of the State of Delaware, then and in such case, I direct that my Executor shall grant to CLARENCE C. COLLISON, JR. and C. WALTER HAWKE, or the survivor of them, the option to purchase said stock under the following terms and conditions: Said option shall be exercised by them if both of them are living by their signifying or by the survivor of them signifying within three (3) months from the date of the grant of Letters unto my Executor their or his decision to purchase such stock. The price of said stock shall be such evaluation as shall be determined by a board of appraisers appointed for that purpose. This board shall consist of three (3) members, one to be selected by my Executor, one to be selected by the optionees, and the third to be selected by the two previously chosen. In de-

termining the value of the stock, this board shall use its best judgment to establish the fair market value of the stock, taking into consideration past, present and future performance and evaluation of said company. The fair market value to be established shall be the fair market value of the same if offered for sale to a stranger, and I specifically direct that said appraisers shall not be influenced in this determination by the former business association between the optionees and myself."

She then provided for deferred payments over a period of four years.

After determining that the net value of the entire Company was $9,000, appraisers fixed a value of $4,500 for the fourteen shares. Defendants challenge that valuation and that is what the lawsuit is about.

The Executor concedes that there were no defects in the procedure by which the option was exercised and the appraisers appointed.[1] All defendants argue that specific performance should be denied because of gross error and/or constructive fraud by the appraisers in arriving at their valuation. The record they have made suggests that a minimum valuation of the Company is $89,254 or $44,627 for the shares.

II

Plaintiffs made out a *prima facie* case upon showing compliance with the appraisal procedure stated in the will. And defendants tacitly concede this.[2] But they defend on the basis of egregious errors made by the appraisers in arriving at the valuation. Plaintiffs say that question of mistake is not reached because the decision by the Board is the integration of a jural act and cannot be varied by parol.

[1] The intervenors argue that the Executor and/or his attorney (not present counsel) were negligent and violated their respective fiduciary duties in selecting an appraiser, but resolution of that charge is not necessary to this decision.

[2] It is also undisputed that the Bird, Ford shares are "unique" and appropriate for an order of specific performance.

I do not know of any law in this State which gives the decision of an appraiser the finality and the protective enclosure which plaintiffs argue. The policy of our law is to enforce the decision of arbitrators and their decision, in the absence of fraud, is final and will not be re-examined by a court. Ruckman & Hansen, Inc. v. Delaware River & Bay Auth., Del.Supr., 244 A.2d 277 (1968). But this case does not involve arbitration and it is worth pointing out that such a proceeding differs fundamentally from appraisal. The distinction is made in 5 Am.Jur.2d, Arbitration and Award § 3:

"An agreement for arbitration ordinarily encompasses the disposition of the entire controversy between the parties upon which award a judgment may be entered, whereas an agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and the amount of loss, all other issues being reserved for determination in a plenary action before the court. Furthermore, appraisers are generally expected to act on their own skill and knowledge; they may reach individual conclusions and are required to meet only for the purpose of ironing out differences in the conclusions reached; and they are not obliged to give the rival claimants any formal notice or to hear evidence, but may proceed by ex parte investigation so long as the parties are given opportunity to make statements and explanations with regard to matters in issue. Arbitrators, on the other hand, must meet together at all hearings; they act quasi-judicially and may receive the evidence or views of a party to the dispute only in the presence, or on notice to, the other side, and may adjudge the matters to be decided only on what is presented to them in the course of an adversary proceeding."

█ And while an arbitrator may not impeach his own award, a defendant may show that the proceeding was fraudulent as to him because it was not conducted in accordance with the submission, or that it was not conducted in such manner as to result in a fair and impartial award, 5 Am.Jur.2d, supra, § 163; or that the arbitrator made gross errors or mistakes in making the award, Stewart v. Grier, 7 Haust 378, 32 A. 328 (1886). *A fortiori,* he may make the same showing as to appraisal proceedings. There is indeed a more compelling reason for permitting the testing in an appraisal where there is no record of what took place. In making such showing, a defendant may use the testimony of an appraiser. In short, defendants here may rely upon, for present purposes, the evidence in the record supplied by the testimony of the appraisers.

I turn now to the record.

As one of the appraisers plaintiffs selected Frank B. Francis, a member of the bar of the District of Columbia who is self-employed as a fulltime broker in a one-man agency in Wilmington. At the suggestion of his attorney, the Executor selected William C. Hayes, a customer's man at a local brokerage firm. These two appraisers selected as the third person Raymond W. Neely, who is employed as a safe-deposit attendant by a local trust company.

Francis had appraisal experience in valuing insurance agencies. Hayes was wholly inexperienced in such valuations and indeed he had been involved in only one other appraisal of any kind (eight or ten years before as an assistant in the valuation of a trucking business). He had had no experience with an insurance agency. As to Neely, he had never been involved in the appraisal of an agency, but he had been employed for many years in the field office of a large insurance company.

The record is heavy with facts which challenge the decision by the appraisers that all Bird, Ford stock was worth only $9,000 (and the Deisem shares half of that) and, while most of them are useful, I

regard the following as particularly significant:

(1) In the years 1965, 1966, 1967 and 1968 Bird, Ford had gross commissions (after paying sub-agents and brokers) as follows:

| | | |
|---|---|---|
| 1965 | – | $84,234.72 |
| 1966 | – | $88,015.00 |
| 1967 | – | $89,254.00 |
| 1968 | – | $94,299.00. |

(2) In the following years Miss Deisem received dividends on her shares in the amounts listed:

| | | |
|---|---|---|
| 1964 | – | $ 2,100.00 |
| 1965 | – | $ 2,450.00 |
| 1966 | – | $ 2,450.00 |
| 1967 | – | $ 2,000.00. |

(3) In 1968, the year in which Miss Deisem died, Bird, Ford's net earnings were $13,707.

(4) The affidavit of one expert shows that for purchase and sale purposes a fire and casualty insurance agency is frequently valued on the basis of between 1½ and 2 times gross annual commissions. By that test the value of Bird, Ford would be upwards of $89,000, based on 1967 commissions, and upwards of $94,000 if 1968 figures are used.

Cumulatively, these facts create a substantial doubt in my mind as to whether the appraisal was conducted in such manner as to result in a fair award. And that doubt is confirmed by the testimony of Mr. Neely, who said in his deposition that Mr. Francis thought the agency was worthless, that Mr. Hayes thought it was worth $20,000, and that the matter was resolved this way:

"Of course, Mr. Francis finally said, well, $2,000, and Mr. Hayes * * * [said] $20,000. So there is the gap.

So to settle the whole matter we split it down the middle, which would have been an $18,000 difference, and we broke that in half, which made a $9,000 value."

■ Mr. Neely was the key appraiser and this testimony strongly suggests that the result was an arbitrary cut-down-the-middle between two other values, and that is not the standard specified by Mrs. Deisem.

■ The Court should grant a motion for summary judgment only if it can say that on unquestioned facts the moving party is entitled to a judgment as a matter of law. For the reasons I have indicated, I cannot reach that conclusion on this record. Compare Anthony P. Miller, Inc. v. Wilmington . Housing Authority, 179 F.Supp. 199 (D.Del.1959). I emphasize, however, that I have not made a judgment as to the value of the shares or the agency. Nor should I be understood as suggesting that $4,500 is not a fair price for the half interest. Whether it is must be determined by trial, not by summary proceeding.

Plaintiffs' motion will be denied.