**NORTHEAST FINANCIAL CORPORATION, Joyce Realty Corporation and Kirkwood Fitness and Racquetball Clubs, Inc., Plaintiffs,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

Civ. A. No. 86–89–LON.

United States District Court, D. Delaware.

Feb. 28, 1991.

Melvyn I. Monzack and Rachel B. Mersky, of Walsh & Monzack, P.A., Wilmington, Del., for plaintiffs.

B. Wilson Redfearn and David E. Wilks, of Tybout, Redfearn & Pell, Wilmington, Del., for defendant.

## OPINION

LONGOBARDI, Chief Judge.

This is a civil action based on diversity of citizenship brought by the Plaintiffs Northeast Financial Corporation, Joyce Realty Corporation and Kirkwood Fitness and Racquetball Clubs, Inc. ("Northeast") against Defendant Insurance Company of North America ("INA"). The Plaintiffs seek damages on Defendant's alleged breach of an insurance contract. Following an appraisal procedure that set the amount of damages, Plaintiffs filed the present motion to vacate the appraisal award.

## I. FACTS

In 1984, Defendant issued a written insurance policy whereby Plaintiffs' health and fitness club located on Route 202 in Chadds Ford, Pennsylvania (the "Route 202 facility"), was insured for a period of one year commencing on June 1, 1984. The policy insured against several risks of loss or damage including coverage denominated Loss of Income ("LOI"). The LOI coverage provides that if the insured's business is temporarily interrupted as a result of a covered loss such as a fire, the insurance provider would compensate the insured for the gross income that the insured would have earned during the business interruption. The LOI coverage is designed to permit the insured to pay any normal expenses that would have accrued during the shutdown. If any amount remains above and beyond expenses, then the insured may retain it as the profit that the insured

would have earned if the business had not been interrupted. The LOI limits for the Route 202 facility are set at $60,000 per month and $240,000 in the aggregate.

On April 30, 1985, a fire damaged the Route 202 facility and forced Plaintiffs to temporarily close the facility. Plaintiffs were able to reopen the facility in mid-July of 1985. Plaintiffs determined that gross income for the Route 202 facility was derived from health club membership sales, sales from their Pro shop and vending machines and interest and credit life insurance income from the health club membership sales. Based on these considerations, Plaintiffs determined that the total amount of income lost as a result of the business interruption was $184,131. After Plaintiffs made a claim based on their estimate of lost income, Defendant conducted its own estimate which differed in amount from the Plaintiffs. Defendant, however, paid an advance of $75,000 against the claim.

Following a series of failed negotiations between the parties, Plaintiffs instituted the present action for breach of contract. Defendant responded by invoking the appraisal procedures contained in Plaintiffs' insurance policy. The procedures provide that if the Defendant cannot agree with the insured on the amount of the loss, then either party by written request could demand an appraisal to settle the loss. Thereafter, Defendant filed a motion to stay the action pending resolution of appraisal proceedings.

This Court granted Defendant's motion and an award was entered on October 31, 1989. On November 27, 1989, Plaintiffs filed the instant motion to vacate the appraisal award, dissolve the stay and proceed with a judicial hearing. The parties stipulated, however, that they would forgo a judicial hearing on the issue of whether it was an insurance industry custom to pay pre-award interest and agreed that this issue would be resolved by the Court based upon submissions of the parties. Docket Item ("D.I.") 32. The parties further

agreed that if there were any disputes of fact that the Court would resolve those disputes based on the affidavits and law presented to the Court. *Id.*

## II. DISCUSSION

### A. *Legal Standard*

A federal court sitting in a diversity action must apply the substantive law of the state in which it sits. *Brown v. Caterpillar Tractor Co.*, 696 F.2d 246, 249 (3rd Cir.1982); *Becker v. Interstate Properties*, 569 F.2d 1203, 1204 (3rd Cir.1977), *cert. denied*, 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). If there is no ruling by the state's highest court, then the federal court must "apply what they find to be the state law after giving 'proper regard' to the relevant rulings of other courts of the state." *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783, 18 L.Ed.2d 886 (1967); *First National State Bank v. Commonwealth Federal Savings & Loan Assoc.*, 610 F.2d 164, 172 (3rd Cir.1979). When state law is unclear, the District Court must predict how the state's highest court would resolve the issue. *Rabatin v. Columbus Lines, Inc.*, 790 F.2d 22, 24 (3rd Cir.1986); *McGowan v. University of Scranton*, 759 F.2d 287, 291 (3rd Cir.1985).[1]

■ The first issue before the Court is what standard of review to apply when assessing the appraiser's award on Plaintiffs' motion to vacate. In making this analysis, the Court is aware of the procedural distinctions that Delaware courts have long recognized exist between arbitration and appraisal. *Hanby v. Maryland Casualty Company*, Del.Supr., 265 A.2d 28, 31 (1970). One distinction commonly drawn is that arbitration is typically conducted in a quasi-judicial proceeding with hearings, notice of hearings, oaths of witnesses and constitutes a final settlement of the dispute between the parties. *Collison v. Deisem*, Del.Ch., 265 A.2d 57, 59 (1970). Appraisal, on the other hand, is generally

---

1. The Court has already determined that Delaware law applies to the insurance contract at issue in this case. D.I. 24 at 2–3.

more informal in that the appraisers are not under oath, are not obliged to hear evidence and may proceed by ex parte investigation. *Id.* In addition, appraisal extends only to a determination of actual cash value, all other issues being reserved for decision by a court. *Pullman, Incorporated v. Pheonix Steel Corporation,* Del.Super., 304 A.2d 334, 339 (1973). Based on these procedural distinctions, the Delaware Court of Chancery has held that "an appraisal procedure is not the equivalent of arbitration and this Court is not limited in its review of an appraisal as it would be in the case of arbitration." *Morris, Nichols, Arsht & Tunnell v. R H International,* Del.Ch., Berger, V.C., 1987 WL 33980 (Dec. 29, 1987). Seizing upon this language, Plaintiffs advance the argument that in the instant case, the majority's appraisal award is not binding upon them and that they are entitled to a judicial determination of their claim. The Court observes, however, that contrary to the *Morris, Nichols* decision and Plaintiffs' assertions, the Delaware Supreme Court has already definitively ruled on this matter.

In *Closser v. Penn. Mut. Fire Ins. Co.,* Del.Supr., 457 A.2d 1081 (1983), the Delaware Supreme Court reviewed an appraisal provision similar to the one currently at issue and held that:

> ... since the policy states that "an award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss", we construe the appraisal provisions of the policy, if invoked, to provide a *mandatory form of arbitration,* precluding recourse to the courts.

*Id.* at 1087 (emphasis supplied).

Recognizing the dispositive nature of the *Closser* decision, Plaintiffs attempt to factually distinguish their case on the ground that the language in their insurance policy is different from that of the *Closser* provision. Plaintiffs also contend that a reservation of rights clause at the end of the disputed appraisal provision indicates that Defendant never intended the appraisal process to be binding. The first ground can be easily disposed of. The disputed

appraisal clause in Plaintiffs' insurance contract states "[a]n agreement in writing by any two of these three will determine the amount of the loss." The fact that the disputed appraisal language uses the words "will" instead of "shall" and "agreement" instead of "award" is immaterial. The intent is the same.

■ Plaintiffs' second distinguishing ground may also be disposed of summarily. The reservation of rights clause in the disputed appraisal provision reads: "We will not surrender our rights by any act we take relating to an appraisal." Plaintiffs argue that the above reservation of rights precludes the appraisal from becoming binding and, therefore, Plaintiffs' claim is subject to a complete review by the Court.

The Court finds Plaintiffs' second argument unpersuasive, particularly when the appraisal provisions are read together. The introductory sentence of the appraisal procedure states: "If we cannot agree with you on the amount of the loss, either of us can demand that the following procedure be used to settle the amount." Clearly, the use of the word "settle" indicates that Defendant contemplated that the appraisal procedures would be binding on the parties. Similarly, the language that an agreement in writing by any two of the three appraisers "will determine the amount of the loss" also indicates that Defendant intended the appraisal procedure would be final. The Court believes that the reservation of rights clause merely indicates that the appraisal procedure is intended only to fix the amount of the loss and the parties are then free to litigate any other issues in a subsequent judicial proceeding. Accordingly, this Court finds that the *Closser* decision is controlling and that the instant appraisal provision is the equivalent of arbitration on the issue of the amount of damages. The Court will now turn to Plaintiffs' motion to vacate the appraisal award.

B. *Motion to Vacate*

As Plaintiffs' insurance contract was entered into after 1972, Delaware's Uniform Arbitration Act, 10 Del.C. § 5701, *et seq.,* applies to Plaintiffs' motion to vacate the

appraisal award. Section 5714 of the Act provides that:

(a) Upon complaint or application of a party in an existing case, the Court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral except where the award was by confession, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers, or so imperfectly executed them that a final and definite award upon the subject matter submitted was not made;

\* \* \* \* \* \*

But the fact that the relief was such that it could not or would not be granted by a court of law or equity is not a ground for vacating or refusing to confirm the award.

10 Del.C. § 5714.

In the instant case, Plaintiffs assert that section 5714(a)(3) applies and advance two arguments as to why the appraisal award should be vacated under that provision. Plaintiffs first contend that the appraisal majority "exceeded their powers" in deducting $37,500 in rent as a "saved expense." Next, Plaintiffs assert that because the majority failed to make any clear statement addressing the issue of interest, the award was "so imperfectly executed" that "a final and definite award upon the subject matter" cannot be made. The Court will address each of these contentions in turn.

### (a) Rental Deduction

 While the Delaware courts have not addressed the issue of when appraisers or arbitrators have exceeded their powers, the Third Circuit's opinion in *Mutual Fire, Marine & Inland v. Norad Reinsurance*, 868 F.2d 52 (3rd Cir.1989), accurately summarizes the majority position elsewhere:

It is, however, well established that the "court's function in confirming or vacating a commercial [arbitration] award is severely limited...." In conducting our review we must examine both the form of relief awarded by the arbitrator as well as the terms of that relief. We must determine if the form of the arbitrators' award can be rationally derived from the agreement between the parties or from the parties' submissions to the arbitrators.... In addition, the terms of the arbitral award will not be subject to judicial revision unless they are "completely irrational."

*Id.* at 56 (citations omitted).

The test announced in the *Norad* opinion essentially establishes a two-part inquiry. The initial step examines whether the form of the award is rationally related to the agreement between the parties or the parties' submission to the arbitrators. The second step of the inquiry analyzes whether the terms of arbitral award are "completely irrational." *See also Rhode Island Council 94 v. State*, 456 A.2d 771, 775 (R.I.1983) (stating "as long as the award draws its essence from the contract and is based upon a passably plausible interpretation of the contract it is within the arbitrator's authority"); *Volvo North America Corp. v. DePaola*, 156 A.D.2d 40, 554 N.Y. S.2d 835, 836 (1990) (short of complete irrationality arbitrators may fashion the law to fit the facts before them); *Prince George's Co. Educators' Ass'n v. Bd. of Educ.*, 61 Md.App. 249, 486 A.2d 228, 231 (1985) (the complete irrationality standard of review reflects the common law preference for settling disputes). The Court believes that the Delaware Courts would follow the substance of these decisions.

In the instant case, the appraisal process used to resolve Plaintiffs' loss of income under the insurance contract was relatively simple and straightforward. The appraisers first estimated what Plaintiffs' gross income would have been if the Route 202 facility had not been temporarily closed as a result of the fire. This total was labelled "estimated income." The appraisers then determined the actual gross income for that period and subtracted it from the estimated value. The difference between the two totals was identified as Plaintiffs' "loss of income." The appraisers also calculated

the cost of such items as oil, water, electricity, office supplies and payroll that did not have to be paid as a result of the shutdown. This total was called "saved expenses" and the difference between Plaintiffs' "loss of income" and "saved expenses" constituted the "net loss of income."

While calculating Plaintiffs' loss of gross income, the appraisal majority observed that Plaintiffs' insurance policy included a rental insurance provision that compensated Plaintiffs for rent paid during a business interruption. The parties submissions indicated that Plaintiffs had paid $37,500 in rent during the temporary shutdown. The appraisal majority noted, however, that Plaintiffs coverage under the rental insurance provision was only $13,650. Thus, the difference between the actual rent paid during the business interruption and the amount of available rental insurance was $23,850.

The problem facing the appraisers was how to handle the $23,850 in uncovered rental payments. As shown above, the rental coverage under the rental insurance provision was not sufficient to cover the shortfall. On the other hand, the appraisal majority could apply excess coverage from the LOI provision to make up the difference. Therefore, the decision the appraisers had to make was whether to interpret the two insurance provisions in a synergistic or in a separate fashion.

The appraisal majority decided not to interpret the coverage limits of the rental provision and LOI provision together. The difficulty that remained was that the LOI calculation method described above contained no contingency for excluding the uncovered rental payments. The method that the appraisal majority apparently utilized was to first lower the LOI award by $37,500. Then they made a rent loss award

of $13,650. The difference between the amount that the LOI was lowered and the amount of rent loss awarded was $23,850, the uncovered portion of the rental insurance.[2]

Mr. Dwares, the neutral Umpire in the appraisal procedure, explained the majority's decision in the following manner:

The deduction of rent as a saved expense ($37,500). The majority opinion was that the policy included a section for loss of rent. Had the policy included a higher limit, an award of up to $37,500 would have been made. Inasmuch as the limit of the policy was $13,650, the amount of the loss was calculated at that amount. Since the rent was insured, it was determined that it was a saved expense in this instance.

D.I. 26, Exhibit C.

In support of their motion to vacate the appraisal award, Plaintiffs argue that the deduction of $37,500 as a "saved expense" is evidence that the appraisal majority exceeded their powers in violation of the test enunciated in *Norad*. Plaintiffs argue that because neither party raised the issue of the rental insurance, the majority's deduction of the rent paid was not rationally related to the submissions. Plaintiffs also argue that because only $13,650 of the rent was insured, the majority's decision to deduct the full $37,500 of rent that they might have insured is completely "irrational."

As discussed above, the computation of gross income necessarily involves a determination of which expenses should be included and which should be excluded. Accordingly, the appraisal majority's consideration of the rental insurance provision is both rationally related to the parties' submissions and the insurance contract.

Plaintiffs' second argument is more problematical and stems from Mr. Dwares' un-

**2.** The appraisal procedure provided that each party could appoint their own appraiser to determine the amount of the loss. The two appraisers then select a neutral Umpire. The two appraisers then appraise each item for its value at the time of the loss and the amount of the loss. If the two appraisers cannot agree with each other on these calculations, then an agree-

ment between the Umpire and one of the appraisers, in writing, will determine the amount of the loss. In the instant case, Plaintiffs' appraiser, Mr. Norman Shuman, was overruled by the majority's decision to treat the $37,500 as a saved expense and also not to award pre-judgment interest.

fortunate use of the term "saved expense" to characterize the appraisal majority's decision to lower the loss of gross income award by the entire rental expense. As stated previously, the term "saved expense" refers to expenses that do not have to be paid as the result of a temporary shutdown. In the instant case, the rental obligation continued during the shutdown so that the rent actually paid did not constitute a saved expense in the conventional sense.

The Court believes, however, that the use of the term "saved expense" in this instance is a misnomer. The concept that the appraisal majority tried to convey was that because the two insurance provisions were separate, each loss had to be considered independently. In other words, the rental loss had to be considered without regard to the income loss and the income loss had to be considered without regard to the rental loss. An analogous situation might occur where an insured party has both property and personal injury protection as part of a homeowner's policy. The fact a single injury causes both personal and property damage does not allow the insured to transfer excess coverage from property injury to personal injury or vice versa.

Plaintiffs obviously favor a contract interpretation theory that would read the two insurance provisions together such that whatever loss was not covered in the rental insurance provision could be made up in the LOI insurance provision. Under these circumstances, however, the Court cannot conclude that the majority's decision to interpret the two provisions separately was "completely irrational." In addition, while the Court may not have interpreted the two provisions in such a manner, the Court is mindful that under section 5714 "the fact that the relief was such that it could not or would not be granted by a court of law or equity is not [a] ground for vacating or refusing to confirm the award." 10 Del.C. § 5714(a).

(b) Indefiniteness

Plaintiffs' second ground for vacating the appraisal majority's award is the major-

ity's failure to award interest from the date of the loss renders the award so imperfectly executed that a final and definite award cannot be made. Plaintiffs base their argument on a statement in Mr. Dwares letter that:

The majority did not consider interest on the award as it was not considered to be part of the loss. If interest is customarily paid due to the length of time between the actual loss and the date of final payment of an award, we recommend that the insurance company include interest with its payment.

D.I. 26, Exhibit C.

Plaintiffs argue that because the appraisal majority grounded their denial of pre-award interest conditional upon the custom of the insurance industry, a final and definite award cannot be executed. While no Delaware Court has passed on the issue of what constitutes a definite and final appraisal or arbitral award, the majority position elsewhere is that an award must be "sufficiently clear and definite so that it is susceptible of enforcement and those called upon to enforce it must not be misled nor called upon to pay more than is due." *H.E. Sargent, Inc. v. Town of Millinocket*, 478 A.2d 683, 686 (Me.1984) (quoting *Lisbon School Committee v. Lisbon Ed. Ass'n*, 438 A.2d 239, 245 (Me.1981)). In addition, an award is indefinite when "the dispute is not settled, relegating the parties to new controversies or future litigations in order to ascertain their rights." *Johnston v. Johnston*, 161 A.D.2d 125, 554 N.Y.S.2d 851, 853 (1990).

In the instant case, the Court finds that the appraisal majority's denial of pre-award interest contingent upon whether it is an insurance industry custom to pay interest is too ambiguous in its present form to be enforced by the Court. The Court does not believe, however, that the entire award should be vacated merely because the appraisal majority based their decision on a contingent question of fact.

Accordingly, the Court conducted a conference with the parties during which the parties agreed and stipulated that the

outstanding issue of whether it is an insurance industry custom to pay pre-award interest would be resolved by the Court based on upon submissions by the parties. D.I. 32. The parties further agreed that if there were any disputes of fact that the Court would resolve those disputes based on the affidavits and law presented to the Court. *Id.*

The Court having reviewed the submissions finds that as a general rule in Delaware, interest accrues from the date payment is due a plaintiff. *See, e.g., Watkins v. Beatrice Companies, Inc.,* Del.Supr., 560 A.2d 1016, 1020 (1989); *Moskowitz v. Mayor & Council of Wilmington,* Del. Supr., 391 A.2d 209, 210 (1978). Furthermore, in the case of a fire insurance contract, interest accrues from the date that the policy delineates as the time when payment is due. *Metropolitan Mut. Fire Ins. Co. v. Carmen Holding Co.,* Del.Supr., 220 A.2d 778, 782 (1966) (because policy contained standard provision that required payment within sixty days after filing of proof of loss, interest accumulated from that date).[3]

■ A finding that the insurer paid the principal due to the insured within the time frame allotted under the policy, however, does not end the analysis. Delaware case law also suggests that other factors such as unreasonable delay by one of the parties could affect whether pre-award interest should be granted or not. *See, e.g., Metropolitan Mut. Fire Ins. Co.,* 220 A.2d at 781–82 ("There may be cases where the rule is somewhat affected by other considerations, such as long delay on the part of the plaintiff in prosecuting his action...."). This exception to the rule is in accord with

general principles concerning the payment of pre-award interest:

> Where a fire insurance policy provides for an appraisal or arbitration in case the parties should disagree as to the amount of loss payable thereunder, and the insurer avails itself reasonably of its right to request appraisal or arbitration, interest on the principal does not begin to run until the appraisal or arbitration award has been made. On the other hand, where the insurer *does not reasonably avail itself of, or waives its right to request appraisal or arbitration, interest begins to run irrespective of whether the policy, expressly or by implication, defers the time of payment until after appraisal or arbitration.*

15 *Couch on Insurance 2d* (rev. ed.) § 54:208 (emphasis added).

With these general principles in mind, the Court turns to the facts of the instant controversy. First, the Court finds that according to the terms of Plaintiffs' insurance policy, Defendant was obligated to make payment within thirty days of one of the following events: (1) the Defendant reached an agreement with the Plaintiffs over the loss; (2) the entry of a final court judgment; (3) the filing of an appraisal award. D.I. 34A, Exhibit 5. As neither of the first two events is applicable and it is uncontroverted that the Defendant made a disbursement corresponding to the terms of the appraisal award within the time contractually set for payment, the Court cannot find that Plaintiff is entitled to pre-award interest under the general rule regarding pre-award interest.

---

3. In support of the general rule that an award of prejudgment interest is not warranted where the terms of the policy regarding the disbursement of principal are met, Defendant submitted the affidavit of Jonathan C. Held. In the affidavit, Mr. Held states that "[o]ver the course of the last fifteen (15) years, in the many appraisals in which I have been involved, the issue of interest has always been resolved on the basis of the policy language." D.I. 34A, Exhibit 6. This belief is in agreement with secondary authorities:

> Another policy provision which has often affected the date from which prejudgment inter-

est has been held to commence is one providing for the appraisal or arbitration of the fire loss.... Where an appraisal or arbitration award has been made pursuant to policy provisions deferring payment of the principal until after such an award has been made or until the expiration of a certain period after the award has been made, interest would begin to accrue at the time the award became payable under the policy terms....

Annotation, *Fire Loss—Right to Prejudgment Interest* 5 A.L.R. 4th 133, 134 (1981).

Similarly, a review of the events leading up to Defendant's invocation of the appraisal process does not reveal any conduct falling within the "unreasonable delay" exception to the general rule. As recited in Plaintiffs' own brief, Plaintiffs suffered a business interruption loss between April and mid-July of 1985. Plaintiffs immediately contacted Defendant regarding the loss and Defendant advanced $75,000 towards the claim. D.I. 33 at 1. A dispute arose with regard to the calculation of the remainder of the claim and, despite negotiations between the parties from July of 1985 to February of 1986, both sides were unable to reach an agreement regarding the total amount of the loss. *Id.* On February 26, 1986, Plaintiffs decided to forgo their right to appraisal and instituted the instant suit.

Based on the foregoing events, the Court cannot find anything in the factual record that even remotely suggests that Defendant acted either in bad faith or sought to unreasonably delay the resolution of Plaintiffs' claim prior to the bringing of the current action. As shown above, extensive negotiations were conducted by both parties from the time the injury occurred up to the commencement of the lawsuit. In addition, Defendant advanced $75,000 as an initial loss assessment and sought only to contest the remainder of the claim. It was only after "all avenues of negotiation to attempt to settle" the loss were exhausted that a lawsuit was necessary. D.I. 33 at 1.

Events occurring after the commencement of Plaintiffs' lawsuit also reveal a lack of bad faith or unreasonable dilatory tactics on the part of the Defendant. On March 12, 1986, Defendant's attorney informed Plaintiffs' attorney that a demand for appraisal had been made. D.I. 34 at 3. The demand letter was sent approximately two weeks after the present case was filed, D.I. 31 at 3, and was reflected as an affirmative defense in Defendant's answer to Plaintiffs' Complaint. D.I. 3 at 3. Nonetheless, Plaintiffs argue that they are entitled to pre-award interest because appraisal was not requested until after the insured filed suit and also because the appraisal demand letter was sent approximately eleven months after the date of the occurrence. D.I. 33 at 3–4.[4]

In *Hanby v. Maryland Casualty Company*, 265 A.2d 28, the Delaware Supreme Court faced the issue of whether an insurer acts in bad faith in a fire loss case when it invokes appraisal procedures after the insured had filed an action on the loss. The facts of that case are analogous to the instant one in that the plaintiff's premises were substantially damaged by fire in May of 1969. Between May and August of that year the parties attempted but were unable to reach a settlement. *Id.* at 29. Plaintiff commenced suit on the matter on September 12 and on October 6 defendant's counsel informed plaintiff's counsel that defendant desired appraisal to determine the amount of loss. Plaintiff argued that the Defendant had acted in bad faith and thus was estopped from seeking appraisal. The *Hanby* court held that "plaintiff had the same right to make demand for appraisal as Maryland did. She elected to waive that right and go to suit, but that decision cannot deprive Maryland of its right under the contract." *Id.* at 31.

Like the court in *Hanby*, this Court cannot hold that Defendant acted in bad faith when it invoked its contractual right to appraisal after suit was brought. Nor can the Court hold that a delay of approximately two weeks after settlement negotiations formally break down constitutes an "unreasonable delay" on the part of the Defendant. Accordingly, the Court holds that Defendant's advancement of an initial loss payment, its extensive settlement discussions with Plaintiffs, its prompt invocation of the appraisal procedures and its payment of the appraisal award within the

---

**4.** In the affidavit attached to Plaintiffs' pre-award interest brief, Robert Hackett, Jr. partially bases his belief that interest is appropriate in the instant case on the fact that the appraisal demand was sent "approximately one year after the date of the occurrence." D.I. 34, Exhibit A.

The Court notes, however, that both parties stated that the demand letter was sent in March of 1986, two weeks after the commencement of Plaintiffs' lawsuit and less than eleven months after the April 30, 1985, fire. D.I. 31 at 3; D.I. 34 at 3.

contractual time period do not constitute bad faith or unreasonable delay on their part. Accordingly, Plaintiffs' motion for the grant of pre-award interest is denied.

### III. CONCLUSION

Plaintiffs' motion to vacate the appraisal award on the ground that the appraisal majority's deduction of $37,500 in rent paid is not rationally related to the submissions and is completely irrational is denied. Plaintiffs' motion to vacate the appraisal award on the ground that the appraisal majority's denial of pre-judgment interest renders the award so imperfectly executed that a final and definite award cannot be made is also denied. Plaintiffs' request for attorney's fees under 18 Del.C. § 4102 is denied as the Court has not rendered a judgment against the insurer.