1996 SD 25

**Gilbert ROUPE, Plaintiff and Appellee,**

v.

**Peggy Alice ROUPE, Defendant and Appellant.**

**Nos. 19132, 19161.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1995.

Decided March 13, 1996.

Gary G. Colbath of Banks, Johnson, & Colbath, Rapid City, for plaintiff and appellee.

Myron C. Lindquist, Kadoka, for defendant and appellant.

PER CURIAM.

[¶ 1] Peggy Roupe (Peggy) appeals the valuation and division of property made in the divorce from her former husband Gilbert Roupe (Gilbert). By notice of review, Gilbert challenges the division of his retirement benefits. We affirm in part, reverse in part, and remand.

### FACTS

[¶ 2] Peggy and Gilbert were married in 1965, and their three daughters are now all adults. Gilbert is in his mid–60's and is a retired postmaster. His health is poor, as he is currently under medical treatment for breathing problems, and has had cancer and mobility problems. Peggy is in her early 50's and is employed by the school system in Phoenix, Arizona. In 1984, Peggy left the marital home in Wanblee and moved to Arizona, leaving the children and her husband behind. There she obtained a doctoral degree and has remained.

[¶ 3] Peggy has never returned to the marital home except on two isolated occasions. Over the years between Peggy's departure and the divorce, Gilbert raised two of the parties' children (one child was raised by relatives), maintained the marital residence, and paid off debts the parties had jointly incurred. During her absence, Peggy did not make any contributions to the support of the children or payment of any marital debts.

[¶ 4] In 1992, Gilbert was about to retire from his postmaster position and the young-

est child was about to leave for college. He allowed each of the parties' three daughters to select household goods, family heirlooms, and personal property to complement those items already gifted to them by Peggy. When the daughters made their selections, Gilbert liquidated the remaining non-essential personal property and moved from the marital residence in Wanblee to Hermosa. Gilbert made no attempt to conceal from Peggy his arrangements for the personal property. He then filed for divorce.

[¶ 5] Although the parties stipulated to irreconcilable differences, they were unable to agree upon matters concerning the division of property. Following a court trial, the remaining personal property was divided between the parties. Peggy was awarded the house and 31.3% of Gilbert's federal postal retirement benefits. Peggy filed this appeal, and Gilbert filed a notice of review.

## ISSUES

[¶ 6] **I. Did the trial court abuse its discretion in making the property division?**

[¶ 7] Peggy contends that the property division does not take into account the dissipation, concealment, and wasting of substantial marital assets by Gilbert. She contends that the court should have imposed a constructive trust or should have awarded her more of the property to compensate for this alleged dissipation of assets. Our review of a division of property is limited to a determination of whether there has been an abuse of discretion, given the requirements of an equitable division based on the seven standard considerations for dividing property.[1]

[¶ 8] It appears that Peggy's principal concerns are her claims that Gilbert dissipated assets by 1) giving the parties' daughters household goods, family heirlooms, and personal property; 2) auctioning off the remaining non-essential goods; 3) using $12,000 from the Telco Federal Credit Union account (which Peggy alleges is her retirement account) to pay off loans on his insurance policy; 4) not finishing the marital house (which

they were building when Peggy left) and selling the furnace intended for the house; and 5) depositing into his accounts a check for $16,603 payable to Peggy. She also contends she was not credited for having paid a bank loan of $12,855 which represented a marital obligation, and that Gilbert did not make a significant contribution to the acquisition of marital property.

[¶ 9] The trial court was faced with a unique situation in considering the division of property. Peggy had been absent from the marital home for eight years during which time Gilbert maintained the marital property without any help from her, the parties' children had graduated from high school and left home, and Gilbert faced retirement. Peggy had opportunities in those 8 years to retrieve other items she wanted but chose not to do so, and did not inform Gilbert that there were any items she wanted. Gilbert made no secret of his plan to dispose of their personal property by giving some to their daughters and auctioning most of the remainder in keeping with his retirement plans to move to a smaller place in Hermosa. In fact, he supplied itemized lists of the property sold at auction and given to the parties' daughters. While he may have disposed of the property, he did not squander the property.

[¶ 10] The trial court was justified in rejecting Peggy's claim that Gilbert had wrongly dissipated assets. Gilbert accounted for all of the assets, including the sale price of the items auctioned, and these values were considered by the trial court in making its division. The value of property awarded to Peggy was $38,853, and that awarded to Gilbert was $31,117. (Both figures are exclusive of Gilbert's retirement benefits discussed in Issue II below.)

[¶ 11] Essentially, Peggy's unfocused arguments simply seek to relitigate the property division and do not identify any basis on which the trial court's decision was in error. She failed to prove she is entitled to a disproportionate award of assets because she did not establish the trial court was wrong in

---

1. The principal factors to be considered in making an equitable property division as reiterated in *Osman v. Keating–Osman*, 521 N.W.2d 655, 659 (S.D.1994), are detailed in the discussion of Issue II, *infra*.

rejecting her claim that Gilbert dissipated assets. *Cf. Pennock v. Pennock,* 356 N.W.2d 913, 915 (S.D.1984). Peggy has failed to justify reversal of the property division.

### [¶ 12] II. Did the trial court err in dividing Gilbert's federal postal retirement benefits?

[¶ 13] By way of notice of review, Gilbert challenges the award of 31.3% of his retirement benefits to Peggy, contending that she was not entitled to an interest in his retirement. He also argues that it is contrary to the principles of an equitable property division to make such an award. In response, Peggy contends that she should have been awarded the entirety of Gilbert's pension.

■ [¶ 14] We have repeatedly adhered to the principle that retirement benefits which have accrued during the marriage are marital assets subject to property division. *Abrams v. Abrams,* 516 N.W.2d 348, 351 (S.D.1994). As a marital asset, the trial court is compelled to divide this asset based on the seven standard factors to be considered in making an equitable property division:

(1) the duration of the marriage; (2) the value of the property; (3) the age of the parties; (4) the health of the parties; (5) the parties' competency to earn a living; (6) the contribution of each party to the accumulation of the property; and (7) the income-producing capacity of the parties' assets.

*Osman,* 521 N.W.2d at 659.

■ [¶ 15] The trial court determined that only that portion of the retirement benefits which accrued during the marriage and prior to the lengthy separation was marital property.[2] The trial court's memorandum decision reveals the following as its only rationale in awarding Peggy an interest in Gilbert's retirement benefits:

[Gilbert's] pension was a result of 16 years of service from 1976 through 1992. [Peggy's] interest in that plan existed from the date of employment by [Gilbert] until 1985. The Court will thus grant her an interest in ten years of the 16 years during which the pension was earned. It would be my intention to award her the percentage of his retirement which is 62.5 divided by 2, which is 31.3%. I would note that retirement which she accumulated during the course of the marital relationship was all expended for marital use, including the severance pay, which she had a right to have upon her termination from her teaching position at Crazy Horse. I would also note that the monies were used to apparently pay marital debts as well as to provide ongoing subsistence to the children and [Gilbert] although not going to her in any fashion. This seems to be the most reasonable way of dealing with this issue.

From this writing, it is apparent the trial court concluded Peggy was automatically entitled to an interest in Gilbert's retirement and did not analyze it as a marital asset subject to division based on the standard considerations. Further, the fact the proceeds from Peggy's retirement benefits were used for the family does not justify a complete disregard of the necessary considerations, even if the court was trying to strike a "balance."

[¶ 16] We agree with Gilbert's contention that the equities plainly do not support an award to Peggy of half of his pension. The most compelling facts in favor of Gilbert's argument are that he is in poor health, his employability is restricted by his health, he is ten years older than Peggy, and is on a fixed income. In contrast, Peggy is in good

---

**2.** We note, however, that the trial court's actual calculation of the portion of the Gilbert's retirement benefits which accrued during the marriage is inaccurate. It stated that the portion of his retirement which accrued during the marriage and up to the date of separation were marital assets, and used 1985 as the ending date. As a result, the trial court's calculations were based on a 10 year accrual period, from 1976 to 1985. Gilbert worked for the post office for 16 years, and 10 years of that accrual period coincided with the marriage. Thus, it found that 62.5% of Gilbert's total benefits had accrued during the marriage.

However, the uncontroverted facts establish the parties separated in 1984, not 1985. As a result, the benefits earned during the marriage accrued over only 9 years. As a percentage, then, only 56.25% of his retirement benefits accrued during the marriage. Use of the 1985 date is unsupported by the evidence.

health, has a significantly greater capacity to earn a living (especially given her doctoral degree and current teaching position in Arizona), and she can look forward to approximately fifteen more years in the work force. The age, health, and earning capacity of each of the parties are significant considerations and there is no evidence that the trial court applied these factors in making its award. Further, while neither party received income-producing assets, the value of the property awarded to the parties demonstrates that Peggy was awarded over $7,000 more in assets than Gilbert. The evidence also clearly established that, while the parties may have equally contributed to the acquisition of assets, it was Gilbert who maintained all of the marital property during Peggy's eight year absence.

[¶ 17] In reaching our decision, we are mindful that we may reverse a trial court's property division only if we find that it evidences an abuse of discretion. *See Osman,* 521 N.W.2d at 659. Here, we are convinced that the trial court failed to consider the basic principles which guide the division of marital assets when awarding Peggy a portion of Gilbert's retirement benefits. Gilbert has reached retirement and his advanced age and poor health prevent him from working.

He has no income-producing assets, and his only income comes from his $780 monthly retirement benefit and $213 monthly social security benefits. In contrast, Peggy remains active in the work force, she earned an annual salary of over $33,000 in 1992, and has retirement benefits through her employment in which Gilbert has no interest. In light of these circumstances, we conclude that the trial court's award to Peggy of a portion of Gilbert's retirement benefits is contrary to the evidence and against reason. Consequently, this portion of the property division is reversed and remanded.

[¶ 18] Each party is responsible for their own attorney fees.

[¶ 19] Affirmed in part, reversed in part, and remanded.

[¶ 20] MILLER, C.J., and SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, JJ., participating.