1996 SD 136

**Steven L. PRIEBE, Plaintiff and Appellee,**

v.

**Mary Gerth PRIEBE, Defendant and Appellant.**

**No. 19407.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 11, 1996.

Decided Dec. 4, 1996.

Celia Miner and Steven M. Johnson of Johnson, Heidepriem, Miner & Marlow, Yankton, for plaintiff and appellee.

Rick Johnson and Stephanie Pochop of Johnson, Eklund, Nicholson & Dougherty, Gregory, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Mary Gerth Priebe (Mary) appeals the valuation of certain property as well as the calculation of the parties' contributions to the accumulation of marital property following her divorce from Steve Priebe (Steve). We affirm.

## FACTS AND PROCEDURAL HISTORY

[¶ 2] Mary and Steve were married on July 23, 1977. Before and during their marriage, they acquired a fair amount of property, including a house, land, rental properties, a clothing business, various automobiles, interests in other businesses, and life insurance. Steve's primary contribution to the accumulation of property was his industriousness and efforts concerning his family businesses. Mary contributed mainly the ownership of rental properties and the clothing business, as well as her care for their children and home. In addition, Mary had the opportunity to pursue a college degree while she was married.

[¶ 3] After eighteen years of marriage, Mary and Steve stipulated to a divorce on the grounds of irreconcilable differences. They also stipulated to joint legal custody of the two minor children, with Mary having primary physical custody and Steve having liberal visitation rights. Mary and Steve also stipulated to the equitable division of their miscellaneous personal property. Therefore, the two issues remaining for trial were: (1) division of the remaining marital assets and (2) child support.

[¶ 4] The trial court valued all of the marital property, including Steve's interest in four family businesses, which is the primary focus of Mary's appeal. The businesses included Lloyd Priebe & Sons Construction, Inc. (LP & S Constr., Inc.),[1] Lloyd Priebe & Sons Farms, Inc. (LP & S Farms, Inc.),[2] Lloyd Priebe & Sons (LP & S Ptshp.),[3] and West 40, Inc.[4] Steve has a one-quarter interest in all four of these businesses.

[¶ 5] Mary and Steve both presented evidence regarding the value of Steve's interest in the four family businesses. Steve presented testimony from two experts, CPA Dan Loveland (Loveland) and CPA Gary Endorf (Endorf). Mary offered the testimony of expert CPA Timothy Dean (Dean).[5] After considering the testimony of these experts, the trial court valued the businesses as follows: LP & S Constr., Inc. at $234,318; LP & S Farms at $295,904; LP & S Ptshp. at $85,454;[6] and West 40, Inc. at $29,000.

[¶ 6] Loveland further recommended a forty-percent minority discount in valuing the family businesses, while Dean maintained that such a discount is inappropriate in divorce proceedings. Using its discretion, the trial court applied a forty-percent minority discount to Steve's interest. The result was that Steve's interest in the family businesses was reduced from a total of $644,676 to $386,806.

[¶ 7] Mary appeals the trial court's application of the forty-percent minority discount in valuing the four Priebe family businesses. Mary also claims that the trial court undervalued her contributions to the accumulation of marital property. Steve asserts the trial court's evaluations are correct based on the evidence and the trial court made a fair and equitable division of the property.

## STANDARD OF REVIEW

[¶ 8] A trial court's findings of fact are reviewed under a clearly erroneous standard. In applying this standard, the valuation of property involved in a divorce proceeding will not be overturned unless it is clearly erroneous. *Grode v. Grode*, 1996 SD 15, ¶ 5, 543 N.W.2d 795, 799. "All conflicts in the evidence must be resolved in favor of the trial court's findings." *Id.* The trial court's conclusions of law, however, are reviewed under a de novo standard. *Id.*; *Bess v. Bess*, 534 N.W.2d 346, 347 (S.D.1995). No deference is given under this standard of review. *Grode*, 1996 SD 15 at ¶ 5, 543 N.W.2d at 799.

[¶ 9] We apply an abuse of discretion standard when the trial court's property division is reviewed. *Id.* at ¶ 6, 543 N.W.2d at 799; *Abrams v. Abrams*, 516 N.W.2d 348, 352 (S.D.1994); *Radigan v. Radigan*, 465 N.W.2d 483, 487 (S.D.1991); *Henrichs v. Henrichs*, 426 N.W.2d 569, 572 (S.D.1988). The phrase "abuse of discretion" means " 'discretion exercised to an end or purpose not justified by, and clearly against reason and evidence.' " *Paradeis v. Paradeis*, 461 N.W.2d 135, 137 (S.D.1990) (quoting *Bradeen v. Bradeen*, 430 N.W.2d 87, 91 (S.D.1988)).

## DECISION

[¶ 10] **I. Valuation of Marital Property.**

[¶ 11] Mary claims the trial court abused its discretion in making an equitable

---

1. LP & S Constr., Inc. is a construction business which initially was a partnership in 1974 between Steve, his father, and his two brothers. In the 1980's, it was converted to a corporation on the same terms. The corporation owns and continues to purchase machinery and equipment.

2. LP & S Farms, Inc. is a farming corporation which initially was a partnership in 1974 between Steve, his father, and his two brothers. The corporation owns machinery, equipment, and approximately 3,000 acres of land.

3. LP & S Ptshp. is a partnership between Steve, his father, and two brothers. Although the partnership was formed in the 1970's, it did not begin accumulating significant property until the late 1980's.

4. West 40, Inc. was formed in 1992, and owns and operates a convenience store located on Priebe partnership land.

5. Steve's expert, Loveland, valued Steve's interest in LP & S Constr., Inc. at $226,127, while Mary's expert, Dean, valued it at $234,318. Loveland valued Steve's interest in LP & S Farms, Inc. at $244,763, and Dean at $295,904. LP & S Ptshp. was valued by Loveland at $126,768, and by Dean at $87,371. Lastly, Loveland valued West 40, Inc. at $19,737, and Dean at $37,589.

6. In arriving at this value, there was an undisputed reduction in the value of the land due to a transfer of property in 1992.

distribution of the property. In evaluating this claim, we recall that a trial court " 'is not bound by any mathematical formula but shall make such award from the material factors before [it,] having due regard for equity and the circumstances of the parties.' " *Hanson v. Hanson*, 252 N.W.2d 907, 908 (S.D.1977) (quoting *Kressly v. Kressly*, 77 S.D. 143, 150, 87 N.W.2d 601, 605 (1958)); SDCL 25–4–44.

[¶ 12] The trial court stated that "a minority discount is appropriate because Steve does not own a controlling interest in any of these business interests and because any attempted sale of the properties would result in the value being discounted by a would-be purchaser. The court will allow a 40% discount...." The trial court reiterated this opinion in its findings of fact as follows:

> [Steve] does not own a controlling interest in any of the businesses. The businesses are not readily saleable and any attempted sale would result in the value being discounted by a would-be purchaser. Expert CPAs Dan Loveland ... and Gary Endorf testified that under these circumstances a discount of 40% is appropriate. The Court finds that a discount of 40% is proper in the circumstances.

The trial court stated its decision was based on testimony from Steve's experts, Loveland and Endorf. However, the record reveals that Endorf never offered testimony regarding the application of a minority discount.

[¶ 13] Loveland was the only expert who proposed a thirty-five to forty-percent discount in this case. He based this recommendation on experience and materials relating to valuation. At no time did Mary object to the qualifications of Loveland. Furthermore, Mary cited no authority stating that the theory represented by Loveland as to valuing a closely held business was incorrect or unsupported. The extent of Mary's objections consisted of her expert, Dean, countering Loveland's testimony by stating that minority deductions are common only in forced sale and estate planning situations, wherein a thirty-three and one-third percent deduction would be recommended.

[¶ 14] While hearing the aforementioned testimony from three experts, the trial court assessed their credibility. *See Kost v.*

*Kost*, 515 N.W.2d 209, 213 (S.D.1994). The court then used its discretion and applied the forty-percent minority discount to Steve's interest in the three corporations and one partnership. It is settled law in South Dakota that the trial court has the discretion to determine whether the total value of the asset should be included in the equitable division. *See Grode*, 1996 SD 15 at ¶ 20, 543 N.W.2d at 801 (citing *Cole v. Cole*, 384 N.W.2d 312, 314 (S.D.1986)). In addition, Mary cited no authority stating that a trial court has no right to consider a minority discount when making an equitable division of marital assets in divorce cases. SDCL 15–26A–60(6) and the precedent of *Fox v. Fox*, 467 N.W.2d 762, 768 (S.D.1991); *Nielsen v. McCabe*, 442 N.W.2d 477, 480 (S.D. 1989); *Kanaly v. State ex rel. Janklow*, 403 N.W.2d 33, 34 (S.D.1987); *Kostel Funeral Home, Inc. v. Duke Tufty Co.*, 393 N.W.2d 449, 452 (S.D.1986), require a party cite authority for positions argued on appeal.

[¶ 15] Courts in other jurisdictions have applied minority discounts when valuing closed corporations in divorce cases. For example, in *Arneson v. Arneson*, 120 Wis.2d 236, 355 N.W.2d 16, 22 (App.1984), the court determined that a minority discount was applicable because the party's holdings of stock in the closed corporation constituted a minority portion. The trial court's determination in this case was based on expert testimony. Similarly, in *Hayes v. Hayes*, 756 P.2d 298, 300 (Alaska 1988), the trial court applied a minority discount when valuing a closely held business, rejecting as a matter of law that a minority discount was inappropriate in a divorce settlement case because there is no change of ownership. *See also Money v. Money*, 852 P.2d 1158, 1161–62 (Alaska 1993) (noting the limited marketability of a minority share in a closely held corporation); *In re Marriage of Jorgensen*, 180 Mont. 294, 590 P.2d 606, 610 (1979) (mentioning circumstances in which it is proper to apply a minority discount in a closely held corporation); *Bowen v. Bowen*, 96 N.J. 36, 473 A.2d 73, 81–82 (N.J.1984) (emphasizing the importance of expert testimony regarding the value of closely held corporate stock); *Belt v. Belt*, 65 Or.App. 606, 672 P.2d 1205, 1208

(1983) (applying a minority discount when determining the value of a closed corporation); *In re Marriage of Reiling*, 66 Or.App. 284, 673 P.2d 1360, 1364 (1983) (holding it is appropriate to apply a discount to a closely held corporation); *Cross v. Cross*, 586 P.2d 547, 549 (Wyo.1978) (applying a minority discount to the valuation of a family owned corporate ranching business).[7]

[¶ 16] Courts in other jurisdictions have also valued partnerships in a similar fashion. The court in *In re Marriage of Shockley* stated: "As a general matter, it appears that the methods used for valuing closely held corporations are also employed to value partnerships and other types of interests in small businesses." 1989 WL 107690 (Del.Fam.Ct.). In this case, a minority discount was applied when valuing an interest in a partnership because partition would be unrealistic and costly. Similarly, in *Morgan v. Morgan*, 795 P.2d 684, 691–92 (Utah App.1990), the court held that remand was required because the trial court failed to state a rationale for refusing to apply a minority discount when determining the value of minority interests in partnerships. There was testimony regarding the application of minority discounts, but no testimony promoting the denial of such discounts. *Id.* at 691. (On remand, the court determined that a minority discount was inappropriate because the partnership agreement expressly provided that a withdrawing partner's value would be determined by an appraisal of the partnership property without a discount. *Morgan v. Morgan*, 854 P.2d 559, 566 (Utah App.1993)).[8]

■ [¶ 17] The common thread of these cases is that the determination of whether to apply a minority discount depends upon the evidence presented in each case. In other words, this is an issue that must be dealt with by trial courts on a case-by-case basis. In this particular case, based on the record, we cannot find an abuse of discretion by the trial court. As this Court stated in *Grode:*

> Trial courts are also required to determine the credibility of witnesses that testify at trial. The trial court obviously did this and it is not an appellate court's place to interfere. "This represents another case where we are being asked to fine-tune the handiwork of those to whom the decision of marital property has been entrusted. We refuse to do so without a stronger showing than is presented here."

1996 SD 15 at ¶ 21, 543 N.W.2d at 801 (quoting *Buseman v. Buseman*, 299 N.W.2d 807, 810 (S.D.1980)) (other citations omitted).

[¶ 18] Mary further asserts that the trial court erred in "awarding Steve the highest discount possible," as forty percent was the highest percentage recommended during expert testimony. As the Wisconsin Court of Appeals stated in *Arneson:* "Just as the determination of the true market value of the

7. For further instruction regarding the application of minority discounts to closed corporations, see Oldfather, et. al, *Valuation and Distribution of Marital Property*, Volume 2, Ch. 22.08[2][a], at 22–110 (1996), which states, "Revenue Ruling 59-60 represents the most substantial body of official guidance for valuing an interest in a closely held corporation." The Revenue Ruling simply enumerates the following factors to consider when determining the fair market value of stock: "(a) the nature of the business and the history of the enterprise, (b) the economic outlook both generally and for the specific industry, (c) book value of the stock and the financial condition of the business, (d) earning capacity, (e) dividend paying capacity, (f) the existence of any goodwill or other intangible value, (g) stock sales and the size of the block of stock to be sold, and (h) the market price of publicly traded stock of corporations in similar businesses, whether such trading is on an exchange or over the counter." *Id.* at 22–110 through –111. Cases which involve the use of Rev. Rul. 59–60 include: *In re Marriage of Puls*, 268 Ill.App.3d 882, 206 Ill.Dec. 520, 523–24, 645 N.E.2d 525, 528–29 (1994); *Gibbons v. Gibbons*, 619 A.2d 432, 434 (R.I. 1993); *Goodrich v. Goodrich*, 158 Vt. 587, 613 A.2d 203, 205 (1992); *In re Marriage of Shockley*, 1989 WL 107690 (Del.Fam.Ct.).

8. For further support regarding the application of minority discounts when valuing a partnership, see *Wojdak v. Greater Phila. Cablevision*, 444 Pa.Super. 581, 664 A.2d 587, 592–93 (1995), wherein an appraiser applied a minority discount to a partnership when establishing the fair market value of the partnership. The court stated that "in arriving at fair market value of a business interest, it is well-established that there are situations where minority and lack of marketability discounts are appropriate." *Id.* at 593, 664 A.2d 587 (citing Shannon Pratt, *Valuing a Business* (1989); Raymond C. Miles, *Basic Business Appraisal* (1984)). The court ultimately held that the trial court erred in not confirming this appraisal.

stock of a close corporation may lie somewhere between the extremes in value testified to by two experts, so also may the selection of a discount factor lie somewhere between the extremes suggested." 355 N.W.2d at 22. Furthermore, we have previously held that "[t]his court's scope of review is not to place valuations on the property, but only to be sure that the trial court did not abuse its discretion.... The trial court need not be exact in determining the values, but rather, it need only be within a plausible range of figures." *Herrboldt v. Herrboldt,* 303 N.W.2d 571, 572 (S.D.1981).

[¶ 19] Similar to *Herrboldt,* there appears to be no abuse of discretion by the trial court in this case. The record reveals that there was adequate support for the trial court's application of a forty-percent discount. Loveland recommended between thirty-five and forty percent; Dean stated that when applied, thirty-three and one-third percent is appropriate.

## [¶ 20] II. Contribution to the Accumulation of Marital Property.

[¶ 21] The principal factors to be considered in making an equitable property division are the "(1) duration of the marriage, (2) value of the property owned by the parties, (3) ages of the parties, (4) health of the parties, (5) competency of the parties to earn a living, (6) contribution of each party to the accumulation of property, and (7) income-producing capacity of the property owned by the parties." *Grode,* 1996 SD 15 at ¶ 10, 543 N.W.2d at 800 (citing *Johnson v. Johnson,* 471 N.W.2d 156, 159 (S.D.1991); *Ryken v. Ryken,* 461 N.W.2d 122, 126 (S.D.1990); *Saint–Pierre v. Saint–Pierre,* 357 N.W.2d 250, 258 (S.D.1984)).

[¶ 22] Although the trial court considered all seven of these factors, it focused on Mary and Steve's contributions. The trial court stated:

> [A] contribution of Steve over the years through his industry and efforts, along with similar industry and efforts by his brothers, is the main factor which has contributed to the extensive accumulation of the property. This is not to say that Mary has not made considerable contributions

also as a wife and mother. However, during the marriage Mary has been able to take time away from family responsibilities to pursue and receive her college degree which she now has.

Mary claims that these findings as to the parties' contributions are unsupported by the evidence and are, therefore, clearly erroneous.

[¶ 23] As stated in Roupe v. Roupe, when a party's "arguments simply seek to relitigate the property division and do not identify any basis on which the trial court's decision was in error ... [she] fail[s] to justify reversal of the property division." 1996 SD 25, ¶ 11, 544 N.W.2d 540, 542–43. The trial court's evaluation of the contributions of Mary and Steve was based on a record clearly supporting its decision. Steve received most of his interest in the family businesses before his marriage to Mary in 1977. He furthered this interest by working regularly in the businesses. Mary's assistance with the family businesses consisted of doing the books, but she never worked regularly for any of the four businesses. Instead, Mary pursued her education and dealt with various business ventures on her own. In addition, the trial court noted Mary's work raising the family. Therefore, all of Mary's contributions were acknowledged by the trial court. Mary simply disagrees with the assessment of the value of her contributions. Such an assessment, however, is within the trial court's discretion.

[¶ 24] Both Mary and Steve's contributions were contained in the record, and support the trial court's determination. We hold there was no abuse of discretion.

[¶ 25] MILLER, C.J., and SABERS, KONENKAMP, and GILBERTSON, JJ., concur.