#24016, #24030-aff in pt, rev in pt & rem-SLZ

**2006 SD 103**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

<table>
<tr><td>JACKIE L. EDINGER,</td><td>Plaintiff and Appellant,</td></tr>
<tr><td>v.</td><td></td></tr>
<tr><td>JAMES W. EDINGER,</td><td>Defendant and Appellee.</td></tr>
</table>

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
WALWORTH COUNTY, SOUTH DAKOTA

* * * *

HONORABLE SCOTT P. MYREN
Judge

* * * *

RICK A. CAIN of
Cain & Broz                         Attorneys for plaintiff
Mobridge, South Dakota              and appellant.

MELISSA E. NEVILLE of
Bantz, Gosch & Cremer, LLC          Attorneys for defendant
Aberdeen, South Dakota              and appellee.

* * * *

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED **11/21/06**

ZINTER, Justice

[¶1.]     Jackie Edinger appeals the division of property in her divorce.  She contends that the trial court erred in valuing her nursing degree as a marital asset to be divided and erred in dividing the parties' property.  By notice of review, James appeals the calculation of child support and the award of attorney's fees to Jackie.  We reverse the division of property and remand for an equitable division.  We affirm all other issues.

## Facts and Procedural History

[¶2.]     Jackie and James were married August 21, 1999.  They had two children, a son (born May 20, 1996) and a daughter (born January 19, 2000).  Jackie received a nursing degree in the spring of 2001 and was licensed one year later.  She has since been employed full time as a nurse.  James is engaged in farming.  Although Jackie was not involved with the farm, her wages were used for household expenses.

[¶3.]     The parties agreed to a divorce on grounds of irreconcilable differences.  They also agreed to joint custody of the children.  Jackie was awarded primary physical custody and James was awarded visitation.

[¶4.]     With respect to marital property, the record reflects that at the time of their marriage, Jackie and James each had a negative net worth.  At the end of the marriage the parties had a combined net worth of $146,700.  In dividing the property, Jackie was assigned debts greater than assets, leaving her with net debt of $7,420, and James received the parties' entire net worth of $146,700.

**Issues**

[¶5.]        Jackie appeals this property division raising two issues:

   1.  Whether the trial court improperly considered her educational
       degree in making the division of the marital property.

   2.  Whether the trial court abused its discretion in making an
       equitable division of the marital property.

   James raises the following issues:

   3.  Whether the trial court erred in calculating child support.

   4.  Whether the trial court abused its discretion in awarding
       Jackie $2,400 in attorney's fees.

*Valuation of a Professional Degree*

[¶6.]        "[T]he valuation of property involved in a divorce proceeding will not

be overturned unless it is clearly erroneous."  Priebe v. Priebe, 1996 SD 136, ¶8, 556

NW2d 78, 80 (citing Grode v. Grode, 1996 SD 15, ¶5, 543 NW2d 795, 799).

However, "an educational degree earned during the course of a marriage is not

property which is subject to division upon dissolution of marriage."  Kanta v. Kanta,

479 NW2d 505, 508 (SD 1991) (citations omitted).  Jackie contends that the trial

court improperly valued her nursing degree as a marital asset to be divided.

[¶7.]        However, the trial court did not do so.  In the court's memorandum

opinion, *after* determining the value of the combined marital assets to be divided,

the court specifically stated that its valuation of marital property did "not assign

any monetary value to Jackie's education."  Instead, the trial court properly limited

its consideration of Jackie's degree to the two property division factors that require

the court to consider the parties' post divorce income and ability to earn a living.[1]

We acknowledge that in considering the income that would be available to the

parties after the divorce, the trial court did state that the parties' only income

producing *assets* were the farm and Jackie's degree. However, the court specifically

declined to value the nursing degree and the court's remaining analysis reflects that

it only considered the degree to determine the parties' post divorce income and

ability to earn a living. Because the trial court was required to consider Jackie's

educational degree for these purposes, we affirm on this issue.

*Equitable Division of Property*

[¶8.]     Our standard of review for the division of property is well established.

> A trial court's division of property will not be overturned by this
> court unless it appears the trial court abused its discretion.
> Billion v. Billion, 1996 SD 101, ¶14, 553 NW2d 226, 230;
> DeVries v. DeVries, 519 NW2d 73, 75 (SD 1994). "The term
> 'abuse of discretion' refers to a discretion exercised to an end or
> purpose not justified by, and clearly against, reason and
> evidence." DeVries, 519 NW2d at 75 (citing Gross v. Gross, 355
> NW2d 4, 7 (SD 1984)). The determination is not "whether we
> would have made the same ruling, but whether 'a judicial mind,
> in view of the law and the circumstances of the particular case,
> could reasonably have reached such a conclusion.'" *Id*. (citing
> Steffens v. Peterson, 503 NW2d 254, 257 (SD 1993)).

---

1.      In making an equitable property division, the trial court must consider
        the following factors: (1) the duration of the marriage; (2) the value of
        the property; (3) the age of the parties; (4) the health of the parties; (5)
        the parties' competency to earn a living; (6) the contribution of each
        party to the accumulation of the property; and (7) the income-
        producing capacity of the parties' assets.

        Anderson v. Anderson, 2002 SD 154, ¶12, 655 NW2d 104, 107 (citing Roupe
        v. Roupe, 1996 SD 25, ¶14, 544 NW2d 540, 543).

Pellegrin v. Pellegrin, 1998 SD 19, ¶10, 574 NW2d 644, 646-647.  In making an equitable division of the property, the trial court generally considers seven factors.  *See supra* n1.

[¶9.]    Jackie contends that the court's division of property was an abuse of discretion because it was substantially unequal and it failed to consider her contributions to the property accumulated during the marriage.  Jackie points out that at the time of their marriage, she had assets of $3,200 and liabilities of $12,158.99, leaving her with a negative net worth of $8,958.99.  At the same time, James had assets of $170,800 and liabilities of $232,800, leaving him a negative net worth of $62,000.  The trial court determined that at the end of the marriage the parties had accumulated a joint net worth of $146,700.  The court ultimately awarded Jackie non-income producing assets of $29,180 and debts of $36,600 leaving her with net debt of $7,420.  This resulted in an award to her of approximately $1,539 of the property accumulated during the five years of the marriage.  On the other hand, James was awarded the parties' entire net worth of $146,700.  Because James began the marriage with a negative net worth of $62,000 and ended the marriage with a positive net worth of $146,700, he received approximately $208,700 of the property accumulated during the marriage.

[¶10.]    In our opinion, this division is inequitable considering the parties' similar age, health,[2] competence to earn a living, and contributions to the accumulation of property.  We understand that the bulk of the property was the

---

2.    Jackie has a seizure disorder that is currently controlled by medication. Neither party has any other health problems.

farm and related assets, and that the parties agreed that James would retain those assets. However, we are unable to ascertain the trial court's reasoning for not awarding any adjusting payment. Our inability to ascertain the court's reasoning is complicated by the fact that we have been unable to duplicate the property values the trial court used to arrive at its division.[3]

[¶11.] "In divorce cases, the trial court is required to place a value upon all of the property held by the parties and to make an equitable distribution of that property." Caughron v. Caughron, 418 NW2d 791, 792 (SD 1988) (citation omitted). *See also* Guthmiller v. Guthmiller, 2003 SD 120, ¶6, 670 NW2d 516, 517 ("failure to value a marital asset constitutes an abuse of discretion"). Because we are unable to determine precisely how the court valued the property, we are unable to determine why James received the parties' entire net worth. We recognize that our inability may be due to the fact that the parties stipulated to the division of much of their property. However, a complete understanding of the property valuation is necessary for our review.

[¶12.] Further, even though the parties agreed that James would receive the farm, an equitable division is still ultimately required. This often necessitates some sort of adjusting payment. "While we have in the past expressed a reluctance to require a lump sum payment that would necessitate a sale of a farm and thus put a defendant out of the farming business, the court must also make an award [that] is

---

3.     The court referenced a financial statement valuing the farm, and specifically valued some of the personal property, but we are unable to value the remaining property and only find a conclusion concerning the parties' total worth.

fair to the spouse." Hanson v. Hanson, 252 NW2d 907, 909 (SD 1977). Therefore, we reverse and remand for a valuation of all property and a reconsideration of an equitable division.[4]

### *Child Support*

[¶13.] "An award of child support will not be disturbed unless the trial court clearly abused its discretion." Roberts v. Roberts, 2003 SD 75, ¶8, 666 NW2d 477, 480 (citations omitted). However, the underlying "[f]indings of fact are reviewed under the clearly erroneous standard." *Id.*

[¶14.] The trial court based James' child support obligation on the income shown on his 2003 tax return. Eight days before trial, James filed his 2004 tax return. James argues that because SDCL 25-7-6.2, SDCL 25-7-6.3 and SDCL 25-7-6.6 base child support on monthly income and federal tax returns, the trial court erred in refusing to consider his 2004 return. However, the trial court refused to consider the 2004 return because the court found that James was untruthful and that the 2004 return had been manipulated to hide assets.

[¶15.] Although James contends that there was no evidence to support the findings of dishonesty and manipulation, he is mistaken. The trial court noted in its memorandum opinion that:

> After hearing [James] testify and considering all of the evidence presented, I find that he has been intentionally manipulating

---

4. Because of our ruling we do not reach James' arguments concerning the valuation of the machinery. Further, no timely objection was raised to that valuation, and this issue appears to have been raised for the first time on appeal. "This Court does not review issues raised for the first time on appeal." A-G-E- Corp. v. State, 2006 SD 66, ¶19, 719 NW2d 780, 786.

>his income and expenses to minimize his income and assets. I further find that he knowingly testified falsely about matters in this case.

These findings would normally end this matter, but James claims that the court should have specified the points on which it considered him dishonest. However, the court's various references to James's conduct clearly reflect that it was skeptical about the differences in the valuations James gave to his bank and to the court. Further, "'[w]e give the trial court's opportunity to judge the credibility of witnesses and to weigh their testimony due regard when reviewing the trial court's findings of fact.'" Walker v. Walker, 2006 SD 68, ¶11, 720 NW2d 67, 70-71 (quoting Midzak v. Midzak, 2005 SD 58 ¶14, 697 NW2d 733, 737-38). Therefore, there was no clear error in the trial court's findings that James lied and attempted to misrepresent his finances.

[¶16.] James also argues that use of the 2003 return was an abuse of discretion because it reflected two years of crop insurance payments, giving an appearance of greater annual income than he actually receives. However, as the trial court noted, the 2003 return accurately reflected James's average income over the last four years.[5] Considering the fluctuating nature of James's farming income, we find no abuse of discretion in basing child support on a tax return that more accurately reflected average income.

---

5.    For example, James' received $2,860 in government payments in 2002, $36,900 in 2003, and at the time of the October 2005 trial, James had already received $73,000 for 2005. James' crop insurance proceeds were approximately $56,000 in 2002 and 2003, but were $39,000 in 2004. His grain sales were $17,725 in 2003 and $45,999 in 2004. His gross income was

(continued . . .)

*Attorney's Fees*

[¶17.]      The trial court awarded Jackie $2,400 in attorney's fees. The court specifically noted that this amount (approximately thirty percent of Jackie's total fees) was attributable to problems caused by James' lack of candor and unreasonable conduct. James does not appeal this finding. He only argues that Jackie was not entitled to attorney's fees because the trial court did not first explicitly determine the reasonableness of the fees. James correctly points out that our cases generally require a two-step analysis:

> Attorney['s] fees in domestic relations cases are provided for by SDCL 15-17-38. It provides, in pertinent part: ["]The court, if appropriate, in the interests of justice, may award payment of attorney's fees in all cases of divorce, . . . support or alimony. The court may award the fees before or after judgment or order.["]  This statute . . . .require[s] a two-step analysis: First, the court must determine what constitutes a reasonable attorney['s] fee. This requires consideration of (1) the amount and value of the property involved, (2) the intricacy and importance of the litigation, (3) the labor and time involved, (4) the skill required to draw the pleadings and try the case, (5) the discovery utilized, (6) whether there were complicated legal problems, (7) the time required for the trial, and (8) whether briefs were required. Second, it must determine the necessity for such fee. That is, what portion of that fee, if any, should be allowed as costs to be paid by the opposing party.  This requires consideration of the parties' relative worth, income, liquidity, and whether either party unreasonably increased the time spent on the case.

Billion v. Billion, 1996 SD 101, ¶¶48-49, 553 NW2d 226, 236-37 (citation omitted).

_____

(. . . continued)
    $122,844 in 2004 and already $124,000 as of October 2005, without crop
    insurance payments.

[¶18.]     Concededly, the first part of the usual analysis involves a determination of the reasonableness of the fee, which was not independently addressed by the trial court.  However, the court's memorandum opinion reflects that it considered this issue.  The court noted that it had "carefully reviewed the billings provided by [Jackie's lawyer]."  Furthermore, the trial court expressly noted: "While mathematical certainty is not possible, I am convinced that at least 30% of Ms. Edinger's attorney's fees were attributable to Mr. Edinger's conduct."  Therefore, even though the word "reasonableness" was not explicitly stated, the record as a whole reflects that the trial court carefully reviewed the fees and found $2,400 to be reasonable.  We also note that James has argued this point in the abstract without pointing out why $2,400 was unreasonable.  Considering the court's analysis together with the absence of any showing of unreasonableness, we conclude that the trial court's award was not an abuse of discretion.

*Appellate Attorney's Fees*

[¶19.]     James has moved for an award of appellate attorney's fees.  Because he has not prevailed on any issue, that motion is denied.  Jackie has also moved for appellate attorney's fees in the amount of $3,078.24.  We award those fees pursuant to SDCL 15-26A-87.3.

[¶20.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and MEIERHENRY, Justices, concur.